# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                    No. CR 23-0767 JB

MARQUEZ MARTINEZ,

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Report, filed November 2, 2023 (Doc. 42)("Sentencing Objections"). The primary issues are: (i) whether the application of a 2-level enhancement pursuant to § 2K2.1(b)(3)(B) of the United States Sentencing Guideline Manual (U.S. Sent'g Comm'n 2023)("U.S.S.G." or "Guidelines") -- for a "destructive device" -- to Defendant Marquez Martinez' base offense level is inappropriate, because the United States has not shown that M. Martinez constructively possessed two modified shotguns, the first of which was found in an open box near the couch on which M. Martinez slept and the second of which was found in the closet next to the safe in which M. Martinez admitted to storing  guns; and (ii) whether the application of a 4-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(B) -- for an "altered or obliterated serial number" -- to M. Martinez' base offense level is inappropriate, because the United States has not shown that M. Martinez constructively possessed the revolver with an obliterated serial number found in a nightstand drawer in M. Martinez' brother's bedroom. The Court overrules in part and sustains in part M. Martinez' Objections, because the Court concludes that: (i) M. Martinez constructively possessed the two modified shotguns that forms the basis for the U.S.S.G. § 2K2.1(b)(3)(B) enhancement; and (ii) M.

Martinez did not constructively possess the handgun with the obliterated serial number that forms the basis for the U.S.S.G. § 2K2.1(b)(4)(B) enhancement. The Court will entertain any considerations related to a downward variance at the sentencing hearing.

## FINDINGS OF FACT

The Court takes its facts from the Presentence Investigation Report (dated October 23, 2023), filed October 25, 2023 (Doc. 40)("PSR"), the Defendant's Sentence Memorandum and Request for Variance, filed November 14, 2023 (Doc. 43)("Variance Request"), the Audio Recording of Interview with Law Enforcement (taken May 11, 2023), filed November 15, 2023 (Doc. 46)("Interview"). In his Sentencing Objections, M. Martinez does not make any specific allegations of factual inaccuracy in the PSR, and, accordingly, the Court accepts the factual portions of the PSR as findings of fact. See Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact[.]"); United States v. Rodriguez-Delma, 456 F.3d 1246, 1253 (10th Cir. 2006)("[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make 'specific allegations' of factual inaccuracy." (no source provided for quotation)). Additionally, the Court makes its findings of fact by a preponderance of the evidence. See United States v. Williams, No. CR. 17-2556, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)). The evidence and information upon which the Court relies must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). The Court may

rely on hearsay if the hearsay is reliable.[1]  See United States v. Banda, 168 F. App'x 284, 289

(10th Cir. 2006)("[T]here is no prohibition on considering hearsay testimony at sentencing,

provided it bears indicia of reliability.").[2]

---

[1]In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the introduction of testimonial hearsay statements from witnesses not subjected to cross examination at trial violates a defendant's Sixth Amendment confrontation right.  See 541 U.S. at 68-69.  There is no binding precedent from the Supreme Court or the United States Court of Appeals for the Tenth Circuit concerning whether Crawford v. Washington applies to proceedings outside of the trial context.

The Tenth Circuit has indicated in unpublished caselaw that Crawford v. Washington does not bar hearsay statements at a suppression hearing.  In United States v. Ramirez, the Tenth Circuit notes:

> It is beyond reasonable debate that Ramirez's counsel were not ineffective in failing to make a Confrontation Clause challenge to the use of the confidential informant. The Supreme Court has not yet indicated whether the Confrontation Clause applies to hearsay statements made in suppression hearings. See United States v. Garcia, 324 Fed. App'x. 705, 708 (10th Cir. [2009]), cert. denied, [558] U.S. [890] . . . (2009)(collecting cases).  Nonetheless, even if we assume that the Confrontation Clause applies to the hearings at issue here, the admission of the confidential informant's statements was harmless.

388 F. App'x 807, 810 (10th Cir. 2010).  Moreover, based on the same reasoning as the Tenth Circuit in United States v. Ramirez, 388 F. App'x 807, the Court has concluded that hearsay statements are admissible in a detention hearing.  See United States v. Hernandez, 778 F. Supp. 2d 1211, 1227 (D.N.M. 2011)(Browning, J.)("Before Crawford v. Washington, courts held that the Confrontation Clause did not attach to detention hearings. Nothing in the Supreme Court's opinion in Crawford v. Washington undermines those holdings. Moreover, what authority exists after Crawford v. Washington rejects the proposition that Crawford v. Washington applies outside of trial.").

Moreover, other Circuit Courts that have addressed this question have held that hearsay evidence's introduction at pre-trial proceedings does not violate the Confrontation Clause.  See Peterson v. California, 604 F.3d 1166 (9th Cir. 2010)(concluding that the admission of hearsay evidence at a preliminary hearing does not violate the Confrontation Clause because the right to confrontation is a trial right).  See also United States v. Mitchell-Hunter, 664 F.3d 45, 52 (1st Cir. 2011)(holding that the defendant did not have a confrontation right in a pretrial jurisdictional hearing).  Therefore, to the extent that the Court relies on hearsay, the Court concludes that it does not violate M. Martinez' Confrontation right.

[2]United States v. Banda is an unpublished opinion, but the Court can rely on a United States Court of Appeals for the Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

1.      On January 9, 2023, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agents discovered an Instagram account linked to M. Martinez that contained several "stories" advertising the sale of firearms which had been sold previously with a "glitch" or "switch" -- an attachment enabling the gun to "shoot fully automatic."  PSR ¶ 8, at 5 (no citation given for quotations).  See Variance Request at 1.

2.      Between February 1, 2023, and March 20, 2023, after an undercover agent ("UC") contacted M. Martinez through his Instagram account, the UC conducted five controlled purchases of illegal drugs and firearms from M. Martinez.  PSR ¶¶ 9-13, at 5-6.  See Variance Request at 1-2;  Audio Recording of August 30, 2023, Plea Hearing (taken August 30, 2023)("Plea Hearing")(admitting to the sale of firearms without a license and selling "conversion devices" in violation of federal law) .

3.      During these controlled purchases, M. Martinez sold undercover agents three firearms, a Glock 48 9mm pistol -- serial number BCBH780 -- a Palmetto State Armory PSAK47 7.62x39mm rifle -- serial number AKB019133 -- and a Diamond Back DB9R 9mm pistol -- serial

---

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. [. . .] However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that United States v. Banda, United States v. Beierle, 716 F. App'x 782 (10th Cir. 2017), United States v. Williams, 731 F. App'x 268 (5th Cir. 2018), United States v. Ramirez, 388 F. App'x 807 (10th Cir. 2010), and United States v. Leroy, 298 F. App'x 711 (10th Cir. 2008), have persuasive value with respect to material issues in this case, and will assist the Court in its preparation of this Memorandum Opinion and Order.

number DB9R01828.  See PSR ¶¶ 10-11, at 5-6; Variance Request at 1-2; Plea Hearing (admitting to purchasing firearms and reselling them without a license in violation of federal law).

4.     In addition, M. Martinez sold the UC four "Glock Switches," which ATF agents identified as being designed to convert a Glock pistol into a fully automatic machine gun.  PSR ¶¶ 12-13, at 6.  See Variance Request at 1-2; Plea Hearing (admitting to selling "conversion devices" in violation of federal law).

5.     The UC also purchased from M. Martinez "controlled substances, including six strips of LSD and 500 fentanyl pills."  PSR ¶¶ 9-11, 13, at 5-6.  See Variance Request at 1-2.

6.     During the third controlled purchase, Eugene Martinez, an individual whom ATF agents identified as M. Martinez' brother, sat in the passenger seat of M. Martinez' vehicle and informed the UC that he could obtain "switches" for the UC to purchase.   PSR ¶ 11 at 6.

7.      Prior to the fourth controlled purchase, M. Martinez indicated that he was "traveling from his brother's residence to meet the UC."  PSR ¶ 12 at 6.  See Variance Request at 2.

8.     ATF agents identified E. Martinez' residence at 5513 El Encanto Pl. NE, Albuquerque, New Mexico, and conducted surveillance of that location.  See PSR ¶ 12 at 6.

9.     After determining that M. Martinez had purchased thirty-five firearms over a five-month period without the requisite licensure to possess a machine gun, ATF agents executed a search warrant at the 5513 El Encanto Pl. NE residence, which agents had confirmed was M. Martinez' known residence, on May 11, 2023.  See PSR ¶¶ 14-15 at 6.

10.     ATF agents determined that M. Martinez slept on the couch in the living room of the residence, and his brother and brother's partner shared a bedroom.  See PSR ¶ 15 at 6; Variance Request at 2.

11.     During the search, ATF agents "located thirteen firearms, multiple calibers of ammunition, multiple magazines, both loaded and unloaded, and a silencer with no markings," which were "primarily located in the living room and the bedroom belonging to Martinez' brother."  PSR ¶ 15 at 6.

12.     Two of the weapons that the ATF agents located in the residence were "weapons made from shotguns" which meet the definition of a "destructive device pursuant to 26 U.S.C. § 5845(a) and (f)."  PSR ¶ 16 at 6-7.

13.     ATF agents located one of the altered shotguns in the closet in the bedroom that E. Martinez occupied, see Photographs of Modified Beretta Shotgun at 2, filed November 2, 2023 (Doc. 42-1), while the other altered shotgun was found in the living room where M. Martinez slept, see Photographs of Mossberg at 1-2, filed November 2, 2023 (Doc. 42-2); PSR ¶ 16 at 7.

14.     A "Hermann Weihrauch .357 Caliber revolver" with an obliterated serial number was also found in a nightstand in E. Martinez' bedroom.  PSR ¶ 17 at 7.  See PSR ¶ 20 at 8; Photograph of Handgun at 1, filed November 2, 2023 (Doc. 42-3).

15.     Following the search, M. Martinez participated in an interview with ATF agents and advised that he "sells firearms to support himself and stores them in his brother's bedroom," PSR ¶ 16 at 6, and also advised that he "was homeless and was a guest at his brother's house," Variance Request at 2.  See PSR ¶ 16 at 6.

16.     M. Martinez conceded during the interview that he had purchased "hundreds" of firearms since turning twenty-one-years-old, and had purchased "at least 50 . . . in the past six months."  PSR ¶ 16 at 6.

17.     M. Martinez also admitted to storing "four or five" guns, in the residence, which he claimed he stored in the safe in the closet in E. Martinez' bedroom.  Interview at  2:50-3:24.

## PROCEDURAL BACKGROUND

On May 11, 2023, the United States filed the Criminal Complaint (Doc. 1)("Complaint").

In the Complaint, the United States alleges that M. Martinez violated 18 U.S.C. §§ 922(a)(1)

and (o): Dealing Firearms Without a License; Unlawful Transfer/Possession of a Machine Gun

and 18 U.S.C. § 933: Trafficking in Firearms.  See Complaint at 1.  M. Martinez was arrested on

May 11, 2023.  See Arrest of Marquez Martinez, filed May 11, 2023 (text-only)(no document

number provided).  A federal grand jury charged M. Martinez with one count of violating 18

U.S.C. §§ 922(a)(1)(A) and 924, and two counts of violating 18 U.S.C. §§ 922(o) and 924.  See

Indictment at 1-2, filed May 24, 2023 (Doc. 15).  On August 30, 2023, M. Martinez pled guilty to

the indicted charges before the Honorable John F. Robbenhaar, United States Magistrate Judge for

the United States District Court for the District of New Mexico.  See Clerk's Minutes at 1, filed

May 31, 2023 (Doc. 17).

1.      **The PSR.**

The United States Probation Office ("USPO") filed the PSR on October 25, 2023.  See

PSR at 1.  The PSR grouped Counts 1, 2, and 3 for guideline calculation purposes pursuant to

U.S.S.G. § 3D1.2(d).[3]  See PSR ¶ 25, at 8.  For the grouped counts, the PSR calculates that M.

Martinez' base offense level is 18 under U.S.S.G. § 2K2.1(a)(5).  See PSR ¶ 62, at 16.  Then, the

PSR adds an additional 14 levels for a total adjusted offense level of 32: (i) a 4-level specific

offense characteristics adjustment under U.S.S.G. § 2K1.2(b)(1)(A), because the offense involves

between 8 and 24 firearms; (ii) a 2-level specific offense characteristics adjustment under U.S.S.G.

§ 2K1.2(b)(3)(A), because the offense involves a destructive device; (iii) a 4-level specific offense

---

[3]U.S.S.G. § 3D1.2 provides that "[a]ll counts involving substantially the same harm shall
be grouped together into a single Group."  U.S.S.G. § 3D1.2.

characteristics adjustment under U.S.S.G. § 2K2.1(b)(4)(B), because a firearm had an altered or obliterated serial number; and (iv) a 4-level specific offense characteristics adjustment under U.S.S.G. § 2K2.1(b)(6)(B), because M. Martinez "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  PSR ¶¶ 27-30, at 8-9.  Following the addition of these enhancements, because M. Martinez "has clearly demonstrated acceptance of responsibility for the offense," the PSR decreases M. Martinez' offense level by 2-levels for a total offense level of 30.  PSR ¶¶ 36-37, at 9.

Next, the PSR calculates M. Martinez' criminal history category as I, because M. Martinez' criminal history score is 0.  See PSR ¶ 43, at 10.  The PSR states that the statutory term of imprisonment for: (i) Count 1 is 5 years, see 18 U.S.C. § 922(a)(1)(A); 18 U.S.C. § 924(a)(1)(D); (ii) Count 2 is 10 years, see 18 U.S.C. § 922(o); 18 U.S.C. § 924(a)(2); and (iii) Count 3 is 10 years, see 18 U.S.C. § 922(o); 18 U.S.C. § 924(a)(2); PSR ¶ 77, at 16.  The PSR states that the Guideline imprisonment range for a total offense level of 30 and a criminal history category of I is 97 to 121 months.  See PSR ¶ 78, at 16.  The PSR states that each count being a Class D Felony, the Guideline range for a term of supervised release is 1 to 3 years.  See PSR ¶ 82, at 16.   The Court scheduled sentencing for November 28, 2023.  See Notice, filed August 31, 2023 (Doc. 27)(text only).

    2.    **The Objections**.

M. Martinez filed Objections to the PSR.  See Sentencing Objections at 1.  M. Martinez makes two primary Objections to two enhancements the PSR applies.  See Sentencing Objections at 3-5.  First, M. Martinez objects to a 2-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B),

which the PSR applies because the offense involves a "destructive device."  Sentencing Objections at 3-4.  Second, M. Martinez objects to a 4-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B), which the PSR applies because one of the seized firearms has an obliterated serial number.  See Sentencing Objections at 4-5.  Specifically, M. Martinez argues that the United States has not established that M. Martinez "actively or constructively possessed the guns" ATF agents recovered during the search.  Sentencing Objections at 3 (quoting United States v. Gambino-Zavala, 539 F. 3d 1221, 1229 (10th Cir. 2008)).

M. Martinez first argues that the United States has not demonstrated M. Martinez' active or constructive possession of the two shotguns, which give rise to the 2-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B) for destructive devices.  See Sentencing Objections at 3-4.  Regarding the first shotgun, a "Beretta" found in E. Martinez' bedroom, M. Martinez contends that E. Martinez "kept the door to his room closed when he was at home and locked when he was not at home," and "was the only person with a key to his room."  Sentencing Objections at 3.  As a "guest" in his brother's home, therefore, M. Martinez argues that he could not have "exercise[d] control nor dominion over" the Beretta shotgun.  Sentencing Objections at 3-4.  Regarding the second shotgun, a "Mossberg 12-guage . . . the remnant [of which] was found in a box of junk in the living room," M. Martinez avers that he did not know about the firearm and "did not have the desire to own a firearm that was broken beyond repair."  Sentencing Objections at 3-4.  Finally, M. Martinez asserts that "[t]here is no proof that either one of these shotguns were less than 26 inches."  Sentencing Objections at 3-4.

M. Martinez next argues that the United States has not demonstrated M. Martinez' actual or constructive possession of the handgun with the obliterated serial number, which gives rise to the 4-level enhancement under U.S.S.G. § 2K2.1(b)(4)(B).  See Sentencing Objections at 4.  While

M. Martinez acknowledges that the enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number," he contends that actual or constructive possession of the firearm has not been demonstrated where the gun "was found in the nightstand in [E. Martinez'] bedroom" and where M. Martinez was "a guest who occasionally slept on the couch" of the residence.  Sentencing Objections at 4.  Accordingly, M. Martinez requests the Court to sustain his objections and "conclude that . . . the enhancements are based upon speculation."  Sentencing Objections at 4.

>            **b.       The United States' Response.**

The United States responds.  See United States' Response to Defendant's Objections to Presentence Report, filed November 15, 2023 (Doc. 45)("Response").  The United States contends that both enhancements to which M. Martinez objects apply, because M. Martinez "possessed the destructive devices (i.e., the weapons made from shotguns) and the revolver with the obliterated serial number."  Response at 3 (footnote omitted).  The United States agrees with M. Martinez that, for the enhancements to apply, it must show by a preponderance of the evidence that M. Martinez actively or constructively possessed the destructive devices and revolver.  See Response at 4 (citing United States v. Gambino-Zavala, 539 F.3d at 1229).  The United States indicates that M. Martinez "constructively possessed" the weapons, because he "had the power and intent to exercise control over them."  Response at 4.  The United States has, however, submitted to the ATF the two shotguns for further analysis as to whether they constitute "destructive devices" under 26 U.S.C. § 5845(a) and (f), and states that it will withdraw its contention on this point if the ATF concludes the firearms do not constitute "destructive devices."  See Response at 3 n.1.

Specifically, the United States argues that M. Martinez does not dispute that he was "living at the house where the firearms were recovered . . . for some time."  Response at 4.  In addition,

the United States avers that M. Martinez had access to the locations where each weapon was found. See Response at 5.  The Mossberg shotgun was found "in an open box" in the living room, which was "small and Martinez's primary living area."  Response at 5.  Furthermore, the United States provides, Martinez' admissions that he had "at least 'four or five' guns in the residence," and that some of these guns were "located in a safe in his brother's closet," demonstrate that M. Martinez had access to the bedroom, and to the additional shotgun and handgun found therein.  Response at 5 (quoting Interview at 2:55-3:33).

The United States concludes that M. Martinez' activities demonstrate "that he was using the residence as part of his enterprise," because M. Martinez used the residence to store guns that he was buying and selling.  Response at 6.  Indeed, according to the United States, many of the weapons seized during the search, which were found throughout the house, including in the living room where M. Martinez was staying and in E. Martinez' bedroom, were found "in boxes indicating they were recently purchased for resale."  Response at 6.   Taken together, the United States argues, the evidence establishes that M. Martinez had access to the weapons both in living and in his brother's bedroom that give rise to the challenged enhancements with the intent to possess them, and, accordingly, requests that the Court overrule M. Martinez' Objections. Response at 6.

      **c.**      **Addendum to the PSR.**

The USPO submits an Addendum to the Presentence Report, filed November 16, 2023 (Doc. 47)("Addendum").  The USPO acknowledges M. Martinez' Objections and responds to each.  See Addendum at 1-3.  The USPO first advises that the enhancement pursuant to U.S.S.G. § 2K2.1(b)(3)(B) -- for a destructive device -- was applied correctly,  because the United States notes that M. Martinez "constructively possessed the weapons forming the basis of the

enhancement." Addendum at 1. The USPO notes: "The presence of firearms inside the defendant's brother's bedroom was within the scope of the criminal activity and in furtherance of that criminal activity as the defendant was utilizing the residence, specifically his brother's bedroom, to store firearms which he later distributed unlawfully." Addendum at 2. In addition, the USPO provides that E. Martinez, in whose room one of the shotguns was found, "was involved in the same criminal activity the defendant was involved in." Addendum at 2. Moreover, the other shotgun, the USPO argues, was found in the living room in which M. Martinez was staying. Addendum at 2.

The USPO next responds to M. Martinez' objection to the U.S.S.G. § 2K2.1(b)(4)(B) enhancement, which M. Martinez bases on the argument that he did not constructively possess the handgun with the obliterated serial number. See Addendum at 2-3. The USPO argues that M. Martinez constructively possessed the handgun, because he used E. Martinez' bedroom, in which the handgun was found, to store firearms as a part of his criminal activity. See Addendum at 3. Because it argues M. Martinez constructively possessed the shotguns and handgun, the USPO maintains that both enhancements to which M. Martinez objects were properly applied. See Addendum at 3.

The USPO states, however, that the United States has confirmed M. Martinez "is entitled to the third point of acceptance, pursuant to U.S.S.G. § 3E1.1(b)." Addendum at 3. As a result, the USPO decreases the offense level by 1, to 29, which, when combined with M. Martinez' criminal history score of 0, results in a guideline range of 87-108 months. See Addendum at 3. The USPO amends the presentencing report to reflect this new Guidelines range. See Addendum at 3. The USPO filed a second Presentencing Investigation Report, filed November 16, 2023 (Doc. 48), which reflects the offense level reduction, but is otherwise identical to the PSR.

## RELEVANT LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  In excising the two sections, the Supreme Court left the Sentencing Reform Act's remainder intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)    to afford adequate deterrence to criminal conduct;
>
> (C)    to protect the public from further crimes of the defendant; and
>
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the offense's nature and the defendant's character; (iii) the available sentences;

(iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines' ranges are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to considerable deference. See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349). A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable." United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply. See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552

U.S. 38, 46-47 (2007); <u>Kimbrough v. United States</u>, 552 U.S. 85, 90-91 (2007).  Instead, the trial

court must undertake the § 3553(a) balancing of factors without any presumption in favor of the

advisory[4] Guidelines sentence.  <u>See</u> <u>Rita v. United States</u>, 551 U.S. at 351; <u>Gall v. United States</u>,

552 U.S. at 46-47; <u>Kimbrough v. United States</u>, 552 U.S. at 90-91.

---

[4]Attorneys and courts often say that the "Guidelines" are advisory, but it is more accurate to say that the Guideline ranges are advisory.  <u>Gall v. United States</u>, 522 U.S. at 46  ("As a result of our decision [in <u>United States v. Booker</u>], the Guidelines are now advisory [.]"); <u>United States v. Leroy</u>, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."); <u>United States v. Sells</u>, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, <u>see</u> <u>Gall v. United States</u>, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, <u>see</u> <u>Gall v. United States</u>, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated to apply, however, a sentence within the calculated Guidelines range.  <u>See</u> <u>United States v. Sierra-Castillo</u>, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-<u>Booker</u> have discretion to assign sentences outside of the Guidelines-authorized range . . . .").  <u>Accord</u> <u>United States v. Chavez-Rodarte</u>, 2010 WL 3075285, at *2-3 (D.N.M. 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u> that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, 2008 WL 2229550, at *6 (D.N.M. 2008)(Browning, J.).  The

Supreme Court has recognized, however, that the sentencing judge is "in a superior position to

find facts and judge their import under § 3553(a) in each particular case."  Kimbrough v. United

States, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has concluded that the case of an

illegal immigrant who re-entered the United States to provide for his two children and two siblings

was not materially differentiated from other re-entry cases, and, thus, no variance from the

Guidelines sentence was warranted.  See United States v. Alemendares-Soto, 2010 WL 5476767,

at *12 (D.N.M. 2010)(Browning, J.).  On the other hand, in United States v. Jager, 2011 WL

831279 (D.N.M. 2011)(Browning, J.), although the defendant's military service was not present

---

> the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24 (D.N.M. 2014)(Browning, J.)(emphasis in original).

to an unusual degree and, thus, did not warrant a departure, the Court concluded that a variance was appropriate, because the defendant's military service was "superior and uniformly outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he served with distinction." 2011 WL 831279, at *14.  See United States v. Ortega, No. CR 20-1948 JB, 2021 WL 1339415, at *1-2 (D.N.M. April 9, 2021)(Browning, J.).

### LAW REGARDING CONSTRUCTIVE POSESSION OF FIREARMS

"To establish possession, the government must show the defendant actually or constructively possessed the guns." United States v. Gambino-Zavala, 539 F.3d at 1229.  "Actual possession exists when a person has direct physical control over a thing." United States v. Johnson, 46 F.4th 1183, 1187 (10th Cir. 2022)(quoting United States v. Benford, 875 F.3d 1007, 1020 (10th Cir. 2017)).  "Constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016)("Little").[5]  See United States v. Trujillo, No. 21-1323, 2022 WL 17661046, at *2 (10th Cir. Dec. 14, 2022)("To prove constructive possession for purposes of this sentencing enhancement, the government needed to show by a preponderance of the evidence that Trujillo had "both the power to control [the gun] and intent to exercise that control." (quoting United States v. Samora, 954 F.3d 1286, 1290 (10th Cir. 2020))); United States

---

[5]In Little, the Tenth Circuit explained that the Supreme Court's opinion in Henderson v. United States, 575 U.S. 622 (2015), "changes the law of constructive possession in our circuit." Little, 829 F.3d at 1182.  In Henderson v. United States, the Supreme Court "squarely held that constructive possession requires both power to control an object and intent to exercise that control." Little, 829 F.3d at 1182 (citing Henderson v. United States, 575 U.S. at 626).  In Little, therefore, the Tenth Circuit overruled its earlier holding in United States v. Colonna, 360 F.3d 1169 (10th Cir. 2004), which held that, for purposes of constructive possession, "[i]t is not necessary to show that the defendant intended to exercise . . . dominion or control." United States v. Colonna, 360 F.3d at 1179.  See Little, 829 F.3d at 1182.

v. Beierle, 716 F. App'x 782, 790 (10th Cir. 2017)(applying Little's constructive-possession analysis to U.S.S.G. § 2K2.1(b)(1)(A)).

When a defendant "jointly occupies the premises on which the firearm is found," the Tenth Circuit requires "a nexus between the defendant and the firearm." United States v. Benford, 875 F.3d at 1015. See United States v. Williams, 731 F. App'x 268, 270 (5th Cir. 2018)(confirming that a "joint occupancy" analysis is appropriate where the defendant is "not the exclusive occupant of the residence"). To establish such a nexus, the United States "must demonstrate the defendant knew of, had access to, and intended to exercise dominion or control over the contraband." United States v. Johnson, 46 F.4th at 1187. The Court addressed the issue of constructive possession for the purposes of applying sentencing enhancements pursuant to U.S.S.G. § 2K2.1(b)(4)(A) and U.S.S.G. § 2K2.1(b)(4)(A) post-Little in United States v. Montelongo, 555 F. Supp. 3d 1125 (D.N.M. 2021)(Browning, J.). There, the Court concluded that the defendant had constructive possession over four firearms found in the bedroom closet of a residence that the defendant did not own and in which she slept in the living room. See 555 F. Supp. 3d at 1130-32. The Court reasoned that, because law enforcement found "clothes that likely belonged to her in the bedroom" where the guns were found, and the defendant "told [Homeland Security Investigations] agents that she knew there was a gun inside the residence," she "had constructive possession of all four firearms." 555 F. Supp. 3d at 1132. Finally, the Tenth Circuit recognizes "that a defendant may exercise [constructive possession] personally or through others who have an adequate tie to the defendant." United States v. King, 632 F.3d 646, 652 (10th Cir. 2011).

## **ANALYSIS**

M. Martinez objects to the U.S.S.G. § 2K2.1(b)(3)(B) and U.S.S.G. § 2K2.1(b)(4)(B) enhancements on the grounds that he did not constructively possess the firearms forming the basis

for both enhancements.  See Sentencing Objections at 3-4.  To establish that M. Martinez possessed the firearms for the purposes of both enhancements, the United States must show by a preponderance of the evidence that M. Martinez "actually or constructively possessed the guns." United States v. Gambino-Zavala, 539 F.3d at 1229.  An individual constructively possesses a firearm where he or she "knowingly has the power and intent at a given time to exercise dominion or control over" the firearm.  Little, 829 F.3d at 1182.  Furthermore, where the defendant "jointly occupies the premises on which the firearm is found," the United States must establish "a nexus between the defendant and the firearm," United States v. Benford, 875 F.3d at 1015, by demonstrating the defendant "knew of, had access to, and intended to exercise dominion or control over" the firearm, United States v. Johnson, 46 F.4th at 1187.  The Court concludes that: (i) M. Martinez had constructive possession over the two modified shotguns forming the basis for the U.S.S.G. § 2K2.1(b)(3)(B) enhancement; and (ii) M. Martinez did not have constructive possession over the handgun forming the basis for the U.S.S.G. § 2K2.1(b)(4)(B) enhancement. Accordingly, the Court overrules M. Martinez' Objection to the section 2K2.1(b)(3)(B) enhancement and sustains his Objection to the section 2K2.1(b)(4)(B) enhancement.  The Court preserves its rulings on any potential Guideline variance until the sentencing hearing.

I.      **THE COURT OVERRULES M. MARTINEZ' OBJECTION TO THE U.S.S.G. § 2K2.1(b)(4)(B) ENHANCEMENT, BECAUSE M. MARTINEZ CONSTRUCTIVELY POSESSED THE MODIFIED SHOTGUNS THAT FORM THE BASIS FOR THE ENHANCEMENT.**

M. Martinez' objects to the enhancement applied pursuant to U.S.S.G. § 2K2.1(b)(3)(B), because he argues that he did not constructively possess either of the two shotguns, determined to be destructive devices within the meaning of 26 U.S.C. § 5845(f), found during the search.  See Objection at 3-4.  U.S.S.G. § 2K2.1(b)(3)(B) instructs the court to apply a 2-level enhancement "[i]f the offense involved . . . a destructive device . . . ."  U.S.S.G. § 2K2.1(b)(3)(B).  Application

Note 1 clarifies that "destructive device" is defined by 28 U.S.C. § 5845(f), U.S.S.G. § 2K2.1(b)(3)(B) cmt. 1, which provides that a destructive device includes "any type of weapon . . . which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter . . . ," 28 U.S.C. § 5845(f). The PSR states, and M. Martinez does not dispute, that the two shotguns found during the search constitute destructive devices under section 5845(f), because they are "not considered shotguns" and have a bore of more than one-half inch in diameter. Response at 3 n.1. See PSR ¶ 16, at 6-7; Sentencing Objections at 3.[6]

The first modified shotgun (the "Mossberg") was discovered in an open box in the living room in which M. Martinez slept. See Finding of Fact ("FOF") ¶¶ 12-13, at 5-6; Response at 5; Photographs of Modified Mossberg Shotgun at 1-2, filed November 15, 2023 (Doc. 45-5). Martinez argues that he did not have constructive possession over the Mossberg, because he "did not know about" the gun and did not "have the desire to own a firearm that was broken beyond repair." Sentencing Objections at 4. M. Martinez "knew of" and "had access to" the Mossberg, however, because it was plainly visible in a box located near the place M. Martinez slept. United States v. Johnson, 46 F.4th at 1187. See Little, 829 F.3d 1177 (holding that "it would be unreasonable to conclude that Little did not know about the presence of" a firearm located "inside a duffel bag that was either in or under a sleeping bag on the bed" in the "cramped" house that Little rented); United States v. Shannon, 809 F. App'x 515, 519 (10th Cir. 2020)("[C]lose proximity is probative 'when considered with the rest of the evidence presented.'" (quoting United

---

[6]The United States notes that it "has requested further analysis by the ATF" whether the modified shotguns qualify as destructive devices. Response at 3 n.1. "In the event the ATF determines these weapons are not destructive devices, the United States will withdraw its response regarding the enhancement under U.S.S.G. § 2K2.1(b)(3)(B)." Response at 3 n.1.

States v. Bowen, 437 F.3d 1009, 1016 (10th Cir. 2006))); United States v. Alanis, 265 F.3d 576, 592 (7th Cir. 2001)("When a gun is found in a defendant's bedroom . . . it would not be improper for the jury to 'infer that the defendant had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom . . . .'" (quoting United States v. Walls, 225 F.3d 858, 867 (7th Cir. 2000)).

In addition, M. Martinez' statement to officers that he stores the weapons he purchases for resale in E. Martinez' home provides strong evidence of M. Martinez' "intent . . . to exercise dominion or control over" the Mossberg. Little, 829 F.3d at 1182. See FOF ¶ 15, at 6 (quoting PSR ¶ 16 at 6); Interview at 2:50-3:24. Cf. United States v. Johnson, 46 F.4th at 1189 (recognizing that "Johnson's reason for possessing the gun . . . to aid him in drug trafficking" provided "strong" evidence of "intent to exert control over the firearm"). Furthermore, M. Martinez' assertion that he did not "desire to own" the Mossberg because it was "junk" and "broken beyond repair" is unavailing. Sentencing Objections at 4. See Photographs of Mossberg at 3. That the Mossberg constituted a destructive device means the weapon must have at least been "readily convert[able] to" a working device that could "expel a projectile." 26 U.S.C. § 5845(f).[7] This fact, considered in tandem with the fact that M. Martinez admits to buying and storing at E. Martinez' residence a large quantity of firearms for resale, see FOF ¶¶ 9, 16, at 5-6, establishes that it is more likely than not that M. Martinez had intent to exercise control over the Mossberg, and, as a result, that he constructively possessed the gun.

---

[7]In the photograph of the Mossberg, the weapon is missing its stock. See Photographs of Mossberg at 3, filed November 2, 2023 (Doc. 42-2). While M. Martinez indicates that the Mossberg was "broken beyond repair," he does not assert, and the United States does not clarify, whether the weapon was in working order. Sentencing Objections at 4. Accordingly, the weapon may meet the definition of a destructive device -- because it has a bore of greater than one-half inch in diameter and is not a shotgun suitable for sporting purposes -- without need of conversion to working order. See 26 U.S.C. § 5845(f).

The second modified shotgun (the "Beretta") was discovered in E. Martinez' bedroom closet.  FOF ¶¶ 12-13, at 5-6.  See Response at 5; Photographs of Modified Beretta Shotgun at 1-2.  M. Martinez argues that he did not have constructive possession over the Beretta, because E. Martinez "kept the door to his room closed when he was at home and locked when he was not at home," and "was the only person was a key to his room."  Sentencing Objections at 3.  Despite that the Beretta was found in E. Martinez' bedroom, M. Martinez' statements to ATF agents confirm that a "nexus" exists between M. Martinez and the firearm.  United States v. Benford, 875 F.3d at 1015.  That M. Martinez admits he had guns in the residence and that these guns were stored in a safe in his brother's closet demonstrates that M. Martinez "knew of" and "had access to" the Beretta, United States v. Johnson, 46 F.4th at 1187, which was found in plain sight in E. Martinez' closet propped next to the safe, see Photographs of Modified Beretta Shotgun at 2; Interview at 2:50-3:24 (admitting that there were 4-5 guns stored in the residence, most of which were "rifles").  Furthermore, that M. Martinez admits that he "sells firearms to support himself" and stores them in his brother's bedroom closet, FOF ¶ 15, at 6 (quoting PSR ¶ 16 at 6; Interview at 3:20-3:23), demonstrates M. Martinez' "intent . . . to exercise dominion or control over" the Beretta, Little, 829 F.3d at 1182.  The situation here is analogous to that the Court addressed in United States v. Montelongo, 555 F. Supp. 3d 1125, where the Court concludes that defendant "had the 'power and intent to exercise control'" over four firearms found in a bedroom closet despite that the defendant usually slept in the living room.  555 F. Supp. 3d at 1132 (quoting United States v. Beierle, 716 F. Appx. at 791).  In sum, the Court concludes that M. Martinez constructively possessed both modified shotguns found during the search, and, consequentially, overrules his Objection to the U.S.S.G. § 2K2.1(b)(3)(B) enhancement.

II.    **THE COURT SUSTAINS M. MARTINEZ' OBJECTION TO THE U.S.S.G. § 2K2.1(b)(4)(B) ENHANCEMENT, BECAUSE M. MARTINEZ DID NOT CONSTRUCTIVELY POSSESS THE HANDGUN THAT FORMS THE BASIS FOR THE ENHANCEMENT.**

M. Martinez objects to the enhancement applied pursuant to U.S.S.G. § 2K2.1(b)(4)(B), because he argues that he did not constructively possess the handgun with the obliterated serial number found in the nightstand in E. Martinez' bedroom. See Sentencing Objections at 4. U.S.S.G. § 2K2.1(b)(4)(B) provides that, "[i]f any firearm . . . had an altered or obliterated serial number, increase by 4 levels." Application Note 8(B) states: "Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm . . . had an altered or obliterated serial number." U.S.S.G. § 2K2.1(b)(4)(B) cmt. 8(B). M. Martinez argues that he did not have constructive possession over the handgun, because he was "a guest" who occasionally "slept on the couch." Sentencing Objections at 4. M. Martinez slept in the residence's living room, whereas E. Martinez occupied the bedroom, which he kept locked when he was away from the residence. See Sentencing Objections at 3. M. Martinez admits to storing "four or five" guns in the safe in M. Martinez' bedroom closet. Interview at 2:50-3:24. See FOF ¶ 17, at 6. The handgun, however, was in the drawer of a nightstand in E. Martinez' bedroom. See Photograph of Handgun at 1, filed November 15, 2023 (Doc. 45-5). Because the United States has not established a sufficient nexus between M. Martinez and the handgun, the Court sustains M. Martinez' objection to the section U.S.S.G. § 2K2.1(b)(4)(B) enhancement.

Because this case concerns a joint occupancy, i.e., both E. Martinez and M. Martinez had access to the bedroom where E. Martinez slept and M. Martinez stored guns in the closet safe, the United States must establish that M. Martinez "knew of, had access to, and intended to exercise dominion or control over" the handgun. United States v. Johnson, 46 F.4th at 1187. While the fact that M. Martinez stored guns in the closet of the bedroom indicates that he had access to the

bedroom more broadly -- despite that E. Martinez kept the room locked when he was away -- there is insufficient evidence to conclude, by a preponderance of the evidence, that M. Martinez "knew" or "intended to exercise dominion and control over" the handgun.  United States v. Taylor, 113 F.3d 1136, 1144-46 (10th Cir. 1997)(concluding that evidence of constructive possession was insufficient even where the defendant jointly occupied a bedroom in which a handgun was discovered and where government witnesses testified that they had seen the defendant with the firearm, because the United States "fail[ed] to present any evidence tending to show Mr. Taylor had any knowledge of the gun [and] any nexus between Mr. Taylor and the gun").  See United States v. Mills, 29 F.3d 545, 550 (10th Cir. 1994)(reversing the district court because there was insufficient evidence to support a finding that the defendant constructively possessed two guns found in a "dining room table compartment" even though the defendant had "dominion or control over the dining room," because the United States had not "come forward with evidence to connect Mills with knowing constructive possession of the firearms").  Cf. United States v. Alanis, 265 F.3d at 592 (holding that the defendant constructively possessed a firearm where it was found in a nightstand next to the defendant's shared bed, with his eyeglasses, clothing, and wallet nearby). In United States v. Montelongo, the four firearms were found in a closet in which the defendant admitted to storing her belongings.  See 555 F. Supp. 3d at 1131.  Because the defendant admitted to "knowingly possess[ing] at least one firearm found in the residence," and because "HSI Agents found all four firearms in the same location" -- namely, in the closet -- the Court concluded that the defendant constructively possessed all four firearms.  United States v. Montelongo, 555 F. Supp. 3d.  For similar reasons, in this case, the Court concludes that M. Martinez constructively possessed the Beretta, because it was found in the same closet as the safe in which M. Martinez

admitted to storing guns.  See supra p. 21-22.  The same logic, however, does not extend to the handgun.

Unlike the closet, the United States has presented no evidence linking M. Martinez to the nightstand in his brother's room.  See United States v. Mergerson, 4 F.3d 337, 349 (5th Cir. 1993)(concluding that there was insufficient evidence that the defendant constructively possessed a firearm found under the bed in a bedroom that the defendant shared where the weapon was hidden from plain view and "there were no other circumstantial indicia that established" the defendant's knowledge of the weapon).  For instance, the United States has presented no DNA evidence that M. Martinez handled the gun.  See United States v. Samora, 954 F.3d 1286, 1291 (10th Cir. 2020)("DNA evidence provides the necessary nexus to link Defendant to the firearm and establish constructive possession.").  Neither has the United States presented any evidence that M. Martinez kept any of his belongings in the nightstand where the handgun was found.  See United States v. Walls, 225 F.3d at 867 (concluding that the female defendant did not have constructive possession where the "firearm was found in a dresser drawer that arguably contained only men's clothing in it" in a bedroom that the defendant shared with her male roommate).  Finally, the United States has supplied no evidence that M. Martinez had possession of the handgun in the past.  See United States v. Hishaw, 235 F.3d 565, 572 (10th Cir. 2000)("As to Mr. Hishaw's possession of a semiautomatic pistol on prior occasions, we agree with the government that, in certain instances, such evidence may support an inference of constructive possession.").  For the purposes of sentencing enhancements, in cases where the defendant jointly occupies the location in which a firearm was found, the United States must establish, by a preponderance of the evidence, a nexus between the defendant and the firearm.  The Court concludes that no such nexus exists between

M. Martinez and the handgun.  Accordingly, the Court will sustain M. Martinez' objection to the

U.S.S.G. § 2K2.1(b)(4)(B) enhancement.[8]

**IT IS ORDERED** that: (i) the objection to the application of U.S.S.G. § 2K2.1(b)(3)(B)

in the Defendant's Objections to the Presentence Report, filed November 2, 2023 (Doc. 42), is

overruled; and (ii) the objection to U.S.S.G. § 2K2.1(b)(4)(B) is sustained.

_____

UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
    United States Attorney
Sarah Jane Mease
Patrick Cordova
Christopher McNair
Timothy S. Vasquez
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Dennis J. Candelaria
    Assistant Federal Public Defender

---

[8]The Court notes that constructive possession may be joint.  <u>See</u> <u>United States v. King</u>, 632 F.3d 646, 652 (10th Cir. 2011)("[A] defendant may exercise [constructive possession] personally or through others who have an adequate tie to the defendant.").  Accordingly, even if it may be more likely that E. Martinez constructively possessed the handgun found in his nightstand, this does not necessarily preclude a finding that M. Martinez also constructively possessed the firearm. The United States, however, has not supplied any evidence connecting E. Martinez with the handgun, nor has it demonstrated that M. Martinez "exercised dominion and control over" E. Martinez such that M. Martinez could exercise constructive possession of the firearm through his brother.  <u>United States v. Lindsey</u>, 389 F.3d 1334, 1339 (10th Cir. 2004).  <u>See</u> <u>United States v. King</u>, 632 F.3d at 653 ("[W]e do not intend to suggest that access to contraband through another will necessarily equate with the ability to exercise dominion or control over the contraband.").

Office of the Federal Public Defender, District of New Mexico
Albuquerque, New Mexico

*Attorney for the Defendant*